UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: _____#

JANE DOE,

    Plaintiff,

v.

NORTH AMERICAN AUTOMOTIVE SERVICES, INC.
a/k/a NAPLETON AUTOMOTIVE GROUP, an Illinois
Corporation,

    Defendant.

_____/

**COMPLAINT**

Plaintiff, JANE DOE, by and through undersigned counsel, brings this Complaint against Defendant NORTH AMERICAN AUTOMATIVE SERVICES, INC., as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Jane Doe is a citizen of the State of Florida, resident of Palm Beach County, Florida, and is *sui juris*. Plaintiff identifies herself by a pseudonym because in this matter, which involves a sexual battery, she will be required to disclose information of the utmost intimacy and may be further damaged if her identity were publicly known and available. Her identity is known known to each of the Defendants.

2. At all times relevant and material hereto, JANE DOE was an employee of NAG in Palm Beach County, Florida.

3. Defendant, NORTH AMERICAN AUTOMOTIVE SERVICES, INC. a/k/a NAPLETON AUTOMOTIVE GROUP (hereinafter referred to as "NAG"), is a privately-owned



conglomerate that owns 74 motor vehicle franchises under the fictitious name Napleton Automotive Group. NAG is authorized to do business in Florida and operates within the District.

4. At all times relevant and material hereto, Edward Napleton, Jr.. (hereinafter "Eddie Napleton") was an owner, executive, manager, employee and/or agent of Defendant NAG.

5. At all times relevant and material hereto, Dee Frank Grinnell (hereinafter "Pete Grinnell"), was an owner, executive, manager, employee and/or agents of Defendant NAG.

6. The Court has federal question subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331 and 20 U.S.C. §1681(a). The Court has supplemental jurisdiction of Plaintiff's state law claim pursuant to 28 U.S.C. §1367.

7. The Court has venue of this action under 28 U.S.C. §1391 as the Plaintiff resides in this District and a substantial part of the events and omissions giving rise to the claim occurred in this District.

## ADMINISTRATIVE PREREQUISITES

8. On November 23, 2020, the Equal Employment Opportunity Commission issued a Right to Sue Notice to JANE DOE for EEOC Charge No. 15M-2019-00060.

9. All jurisdictional prerequisites have been fulfilled.

## SUMMARY OF FACTS

### *Sexual Assault of Plaintiff by Eddie Napleton*

10. At all relevant times, JANE DOE was employed by NAG as a Corporate Trainer. On August 7, 2018, Plaintiff attended an evening work function at a restaurant in West Palm Beach, Florida. Also in attendance were Eddie Napleton and Pete Grinnell, who are owners, executives, managers, employees and/or agents of NAG.

11. After the meal at the restaurant, Plaintiff intended to leave the function and drive

home, when she was asked by colleagues to join them for a drink at the restaurant bar. She agreed and joined her colleagues at the restaurant bar. That was the last thing she remembered until waking up the following morning in a hotel room at the West Palm Beach Marriott. She was awoken by hotel staff at her door, and West Palm Beach police and EMT entered shortly thereafter.

12. When she awoke, Plaintiff was naked in the hotel room. She was confused and disoriented. The bed covering was soaked with fluids.

13. The West Palm Beach Police Department commenced an investigation. As part of this investigation, video surveillance from the West Palm Beach Marriott was retrieved and reviewed. This video showed Pete Grinnell and Eddie Napleton taking Plaintiff to hotel room no. 102 shortly after midnight. Plaintiff could not walk herself and was in a helpless and dependent state. Pete Grinnell opened the door to the hotel room with a card key. Before entering the room, Plaintiff fell to the ground unconscious. Pete Grinnell grabbed Plaintiff by her feet and dragged her into the room.

14. Upon information and belief, the hotel room where Plaintiff was placed while she was unconscious was obtained and/or purchased by Pete Grinnell. She was brought through the hotel to the room in an incapacitated state. At no point did Plaintiff appear to hotel personnel by her own volition to secure a room in the hotel.

15. As shown on the video surveillance, Pete Grinnell and Eddie Napleton left the room shortly after placing Plaintiff there. Plaintiff remained in the room, but a short time later, video surveillance shows Plaintiff attempting to escape, leaving the room and moving down the hall but falling in the hallway unconscious.

16. Hotel staff then found Plaintiff on the hallway floor. They placed her in a wheelchair and brought her to the lobby. She was incoherent, speaking gibberish and unable to

communicate with hotel staff. The hotel staff tried to identify her but could not. The hotel staff had a Spanish speaking employee come over to attempt to communicate with her, apparently believing that Plaintiff was speaking Spanish. The Spanish-speaking employee noted to the staff that Plaintiff was not speaking Spanish and was incoherent.

17. While Plaintiff was in the lobby in this incapacitated state, a NAG executive walked up and attempted to take her away in the wheelchair. The hotel staff prevented him from doing so, recognizing the condition Plaintiff was in and the potential danger of sexual assault presented by an adult male assuming custody of Plaintiff while she was in that condition.

18. Pete Grinnell then became aware that Plaintiff was in the lobby in her diminished state. He came up to her and hotel personnel, identified Plaintiff in the wheelchair, and instructed hotel staff to return Plaintiff to room 102, where he and Eddie Napleton had placed her a short time before. Plaintiff was returned to the room pursuant to Pete Grinnell's instruction and remained unresponsive, incoherent and incapacitated. At no point did Pete Grinnell or any other employee/agent of NAG, in the interests of Plaintiff's safety and well-being, call emergency medical services, police or attempt to contact Plaintiff's family.

19. As further shown by video surveillance, a short time later Pete Grinnell obtained another a card key for room 102 where Plaintiff had been placed. Grinnell handed the card key to Eddie Napleton. Pete Grinnell, Eddie Napleton and another man proceed, presumably a NAG employee/agent, toward room 102 where they had placed Plaintiff.

20. Upon information and belief, before being handed the card key to room 102, Eddie Napleton called Plaintiff's cell phone from his cell phone. She did not answer because she was unconscious.

21. Eddie Napleton alone then entered room 102 with the card key he had just obtained.

22. Upon information and belief, in the hotel room Eddie Napleton engaged in sex with Plaintiff, including without limitation, vaginal and anal sex, when she was incoherent, unconscious, and incapable of consent to a sexual act. Eddie Napleton commenced sexual activity with Plaintiff upon entering room 102. He found Plaintiff lying on the bed in an area soaked with fluids. He moved her limp, unconscious body to the other side of the bed before performing sex acts.

23. As further shown by video surveillance, Eddie Napleton was alone in the hotel room with Plaintiff for six (6) hours, until he left the following morning.

24. In toxicology tests conducted by the Palm Beach County Sheriff's Office, it was determined on the afternoon of August 8, 2018, approximately fourteen (14) hours after having last consumed alcohol, Plaintiff still had .077 grams of ethanol per 100 milliliters of blood in her system, demonstrating that she was severely intoxicated during the time that she was in the hotel room alone with Eddie Napleton.

25. Upon information and belief, in the hotel room Eddie Napleton engaged in sex with Plaintiff, including without limitation, vaginal and anal sex, when she was incoherent, unconscious, and incapable of consent to a sexual act. In DNA testing conducted by the Palm Beach County Sheriff's Office, Eddie Napleton's DNA was identified in vaginal and anal swabs of Plaintiff. As a result, West Palm Beach Police Department determined that there was probable cause to arrest and charge Eddie Napleton with Sexual Battery on a Helpless Person. The criminal case against Eddie Napleton is still pending.

### Events Following the August 7-8, 2018 Sexual Assault of Plaintiff

26. After regaining consciousness in the Marriott hotel room, Jane Doe was distraught and severely traumatized. She was thereafter psychologically and emotionally unable to return to

work at NAG, particularly under the status quo in which Eddie Napleton continued as her supervisor.

27. Upon information and belief, on August 9, 2020, Eddie Napleton confessed to Mark Eddleman, a former executive of NAG and former friend and confidante of Eddie Napleton, that he raped Plaintiff while she was unconscious.

28. Upon information and belief, on August 9, 2020, Eddie Napleton suggested to Mark Eddleman that he would fabricate a story in which Eddie Napleton had sex with Plaintiff in the morning after she regained consciousness.

29. Upon information and belief, NAG, by and through its agents and representatives, including Pete Grinnell, knew of the police investigation into the sexual assault of Plaintiff by Eddie Napleton on August 8, 2018. Specifically, Pete Grinnell was present in the hotel room when officers from the West Palm Beach Police Department began their investigation and signed a consent for police to conduct a search of the hotel room. Grinnell confiscated Plaintiff's cell phone issued by NAG on August 8, 2018.

30. Upon information and belief, as police were conducting their investigation of the sexual abuse of Plaintiff by Eddie Napleton, Eddie Napleton exerted increasing pressure on Mark Eddleman to make false statements to police investigators. This included instructing Mark Eddleman to "forget" Eddie Napleton's August 9, 2018 confession. Upon information and belief, Mark Eddleman was fired by NAG for his failure to comply with Eddie Napleton's instructions.

31. Following the sexual assault of Plaintiff on August 7-8, 2018 and while the police investigation was ongoing, Plaintiff requested a leave of absence from NAG due to injuries she sustained following the sexual assault by Eddie Napleton and as a result of the actions, conduct and omissions of NAG agents and employees.

32. Upon information and belief, NAG, with full knowledge and awareness of the sexual assault of Plaintiff by Eddie Napleton and the ongoing investigation by the West Palm Beach Police Department, insisted that Plaintiff return to work immediately following the sexual assault by Eddie Napleton, under the supervision of her rapist, Eddie Napleton, without any accommodations.

33. NAG terminated Plaintiff's employment shortly after Plaintiff's request for a leave of absence and with full knowledge and awareness that the West Palm Beach Police Department was investigating the sexual assault of Plaintiff by Eddie Napleton.

34. In a subsequent public statement released by NAG, it took the position of advocate on behalf of Eddie Napleton against Plaintiff, asserting without any factual or good faith basis that the actions of Eddie Napleton did not violate any law or NAG policies..

35. As a result of the sexual battery and Defendant's response, Plaintiff has continued to e be emotionally distraught and has suffered severe, continuing and permanent psychological, mental and emotional injuries, including pain and suffering, shame, humiliation, depression, anxiety, post-traumatic stress disorder, lack of trust, loss of enjoyment of life, mental anguish, loss of income, and the inability to lead a normal life.

## COUNT I: VIOLATION OF TITLE VII and FCRA

36. Plaintiff re-alleges and reincorporates paragraphs 1- 35.

37. Plaintiff, JANE DOE, was subject to sexual harassment, abuse and assault during and following a NAG-sponsored event, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* particularly §2000e-2, §2000e-3, and the Florida Civil Rights Act (FCRA), Florida Statute §760.10(1)(a), in that Plaintiff was discriminated against in the conditions of her employment because of her sex. This discrimination was intentional and retaliatory.

38. At all times relevant and material hereto, upon information and belief, NAG had a pattern and practice of ignoring sexual harassment, sexual abuse, sexual advances, requests for sexual favors, unwelcome or offensive touching, and other conduct of a sexual nature by male employees/agents towards female employees/agents at NAG's corporate offices and dealerships.

39. At all times relevant and material hereto, upon information and belief, NAG ignored and subordinated its own sexual harassment policies.

40. At all times relevant and material hereto, upon information and belief, NAG created a toxic environment in its offices and car dealerships, in a male-dominant industry, in which women were expected to submit to o sexual harassment and misconduct and remain silent in response. .

41. At all times relevant and material hereto, upon information and belief, NAG instituted a policy and practice of paying victims of sexual abuse and misconduct sums of money in order to ensure their silence.

42. NAG sexually harassed and discriminated against Plaintiff in that NAG expected Plaintiff to return to work immediately following the sexual assault by Eddie Napleton, under the supervision of her assailant, Eddie Napleton, without any accommodations and failed to conduct a good faith and reasonable investigation into the sexual assault of Plaintiff consistent with the terms of NAG's policy against harassment.

43. NAG's failure to provide a safe working environment for Plaintiff caused Eddie Napleton's sexual harassment and assault of Plaintiff.

44. During the time Plaintiff was employed by NAG and immediately following the sexual assault of Plaintiff by Eddie Napleton, Plaintiff was the victim of sexual harassment, sexual abuse, discrimination and retaliation.

45. Immediately following a NAG-sponsored event, Plaintiff was sexually assaulted and abused by Eddie Napleton, a NAG employee/agent, while she was incoherent, unconscious, and incapable of consent to a sexual act. NAG denied Plaintiff's request for a leave of absence and insisted that she return to work under the direct supervision of her rapist. This conduct caused Plaintiff great mental anguish and pain and would have seriously and adversely affected the psychological well-being of any reasonable employee.

46. NAG was aware of Eddie Napleton's propensity to sexually harass and assault females, including its female employees. Despite having this knowledge, NAG continued to permit Eddie Napleton to serve as an executive, manager, employee and agent of NAG and provided him access to female employees.

47. The sexual harassment, sexual assault and sexual abuse by Eddie Napleton and NAG was unwelcome, unreasonably interfered with Plaintiff's ability to return to work performance and altered the terms and conditions of Plaintiff's employment.

48. NAG retaliated against Plaintiff for reporting the sexual assault to local police authorities. NAG denied Plaintiff's request for a leave of absence and terminated her employment from NAG without cause.

49. As a direct and proximate result of the violations of her right to be free of sexual harassment and assault in the workplace, Plaintiff has suffered and will continue to suffer damages, including, but not limited to: loss of the capacity for enjoyment of life, humiliation, psychological injuries, mental anguish, loss of income, loss of dignity and self-esteem, and injury to reputation.

50. As a result of the discriminatory actions of NAG and/or its agents and employees, Plaintiff, has been forced to hire an attorney and protect her rights and, as such, is entitled to recover attorney's fees and costs for bringing this action.

WHEREFORE, Plaintiff demands judgment against Defendant NAG for compensatory damages, pain and suffering, lost wages, attorneys' fees and costs pursuant to 42 U.S.C. §2000e-5(k), costs of suit and such other and further relief as this Court deems just and proper.

## COUNT II: NEGLIGENCE

51. Plaintiff re-alleges and reincorporates paragraphs 1-50.

52. At all times relevant and material hereto, upon information and belief, NAG ignored and subordinated its own sexual harassment policies for the benefit of Eddie Napleton.

53. Upon information and belief, it was well-known amongst NAG's owners, managers, employees, agents and staff that Eddie Napleton posed a threat of sexual misconduct to female employees of NAG such as Plaintiff.

54. At all material times, NAG owed a duty to Plaintiff as its employee to use reasonable care to protect Plaintiff's safety, care, health, and well-being.

55. NAG had the duty to engage in reasonable diligence to ensure that Plaintiff was safe from foreseeable harms posed by Eddie Napleton.

56. At all times relevant and material hereto, NAG and Plaintiff were in a special relationship as employer – employee. As a result of this special relationship, NAG owed Plaintiff a duty of reasonable care to prevent foreseeable harm.

57. At all times relevant and material hereto, NAG and Eddie Napleton were in a special relationship as employer – employee in which the NAG owed a duty to control the acts and conduct of Eddie Napleton to prevent foreseeable harm.

58. NAG's duties encompassed using reasonable care in the retention, supervision and hiring of Eddie Napleton and the duty to otherwise provide a safe environment for Plaintiff.

59. NAG had a duty and the power to remove, restrict, and/or control Eddie Napleton, who posed a foreseeable harm to female employees within NAG, such that the harm could be prevented.

60. At all times relevant and material hereto, NAG knew or in the exercise of reasonable care should have known that Eddie Napleton had a propensity for the conduct which caused injury to Plaintiff, particularly that he had a propensity to sexually assault or abuse females with whom he had contacts as an NAG employee.

61. At all relevant times, it was reasonably foreseeable to NAG, by and through their agents and employees, that Eddie Napleton would commit acts of sexual assault or abuse upon females with whom he had contacts as an NAG employee.

62. At all relevant times, NAG knew or should have known that Eddie Napleton was unfit, dangerous, and a threat to the health, safety and welfare of Plaintiff and other female employees at NAG.

63. With such actual or constructive knowledge, NAG's acts and omissions provided Eddie Napleton with the opportunity to commit foreseeable acts of sexual assault or abuse upon Plaintiff.

64. NAG breached its duty to protect Plaintiff from foreseeable harm, resulting in Eddie Napleton's rape of Plaintiff.

65. Upon information and belief, NAG also breached its duties by failing to investigate and/or concealing its awareness of facts regarding Eddie Napleton that created a likely and foreseeable harm to Plaintiff.

66. The Defendant's acts and omissions have caused Plaintiff to suffer damages including but not limited to loss of the capacity for enjoyment of life, humiliation, psychological

injuries, mental anguish, loss of income, loss of dignity and self-esteem, and injury to reputation. These injuries are persistent, permanent, and debilitating in nature.

WHEREFORE, Plaintiff demands judgment against Defendant NAG for compensatory damages, punitive damages, costs and such other and further relief as this Court deems just and proper.

### COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

58.     Plaintiff re-alleges and reincorporates paragraphs 1- 57.

59.     Upon information and belief, on August 9, 2020, Eddie Napleton confessed to Mark Eddleman, a former executive of NAG and former friend and confidante of Eddie Napleton, that he raped Plaintiff while she was unconscious.

60.     Upon information and belief, on August 9, 2020, Eddie Napleton suggested to Mark Eddleman that he would fabricate a story in which Eddie Napleton had sex with Plaintiff in the morning after she regained consciousness.

61.     Upon information and belief, as police were conducting their investigation of the sexual abuse of Plaintiff by Eddie Napleton, Eddie Napleton exerted increasing pressure on Mark Eddleman, a former executive of NAG and former friend and confidante of Eddie Napleton, to make false statements to police investigators.  This included instructing Mark Eddleman to "forget" Eddie Napleton's August 9, 2018 confession.

62.     On or around January 28, 2019, Eddie Napleton. was arrested by the West Palm Beach Police Department and charged with sexual battery on a helpless person relating to his sexual assault of Plaintiff.

63. Upon information and belief, in early February 2019, Mark Eddleman was fired by NAG following a "family meeting" of NAG owners, managers and executives for his failure to comply with Eddie Napleton's instructions to impede the police investigation.

64. On or around February 4, 2019, NAG issued an official statement relating to the arrest of Eddie Napleton. Specifically, NAG stated, in pertinent part "[i]n this case, no policy or law was violated. [NAG] fully support[s] Eddie [Napleton] as he fights to clear his name in court and trust that justice will prevail."[1]

65. The acts and omissions of NAG in condoning and ratifying Eddie Napleton's acts of sexual assault of Plaintiff, while disseminating disinformation via public statements, constitutes intentional, reckless and outrageous conduct.

66. NAG's public support for Plaintiff's rapist, Eddie Napleton, and complete and utter disregard for Plaintiff, a loyal and devoted NAG employee, following her sexual assault was extreme, outrageous, and likely to cause severe emotional distress.

67. NAG's conduct, statements, acts and omissions were outrageous, going beyond all bounds of decency.

68. NAG's acts and omissions caused severe emotional distress to Plaintiff. NAG knew or had reason to know that its outrageous and reckless actions and inactions would cause emotional trauma and damage to Plaintiff.

---

[1] *See* Dealership Manager Accused of Raping Woman at Hotel in West Palm Beach (CBS 12 News Chicago) https://cbs12.com/news/local/dealership-manager-accused-of-raping-woman-at-hotel-in-west-palm-beach [last accessed February 21, 2021]; *See* Edward Napleton Jr., Son of Napleton Auto Group President, Allegedly Had Sex with Unconscious Woman, Police Say(ABC 7 News Chicago) https://abc7chicago.com/son-of-napleton-auto-group-president-allegedly-had-sex-with-unconscious-woman-police-say/5120938/ [last accessed February 21, 2021]; Son of Napleton Auto Group President Charged with Sexual Battery in Florida (Automotive News) https://www.autonews.com/dealers/son-napleton-auto-group-president-charged-sexual-battery-florida [last accessed February 21, 2021].

69. As a direct and proximate result of NAG's intentional or reckless acts and conduct, Plaintiff has suffered and will continue to suffer severe mental anguish and pain.

WHEREFORE, Plaintiff demands judgment against Defendant NAG for compensatory damages, punitive damages, costs and such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial in this action.

Dated: February 22, 2021

                         HERMAN LAW
                         1800 N. Military Trail, Suite 160
                         Boca Raton, FL 33431
                         Tel:  305-931-2200
                         Fax:  305-931-0877

                         By:   */s/ Stuart S. Mermelstein*
                                 Jeffrey M. Herman (FL Bar No. 521647)
                                 jherman@hermanlaw.com
                                 Stuart S. Mermelstein (FL Bar No. 947245)
                                 smermelstein@hermanlaw.com
                                 Jason S. Sandler (FL Bar No. 99136)
                                 jsandler@hermanlaw.com